UNITED STATES of America ex rel. Robert W. PHILLIPS, Petitioner-Appellant,

v.

Frank J. PATE, Warden, Respondent-Appellee.

No. 16883.

United States Court of Appeals, Seventh Circuit.

Dec. 7, 1970.

Robert W. Phillips, Cornelius E. Toole, Chicago, Ill., for petitioner-appellant.

William J. Scott, Atty. Gen. of Ill., Joel M. Flaum, Warren K. Smoot, Asst. Attys. Gen., Chicago, Ill., for respondent-appellee.

Before HASTINGS, Senior Circuit Judge, PELL, Circuit Judge, and REYNOLDS, District Judge.*

HASTINGS, Senior Circuit Judge.

Petitioner Robert W. Phillips appeals from a judgment order of the federal district court[1] denying and dismissing his petition for a writ of habeas corpus. We affirm.

On March 24, 1956, petitioner was sentenced by the Circuit Court of McHenry County, Illinois, to serve a term of 199 years in the Illinois State Penitentiary, on his conviction of a charge of murder pursuant to his plea of guilty thereto. He is now incarcerated as a prisoner of the State of Illinois.

Broadly speaking, petitioner predicates his claim to relief on the ground that his state court conviction is invalid because (1) he was denied his right to appeal his conviction; (2) his plea of guilty was not voluntarily and intelligently made; and (3) the federal district court's adverse judgment was based on an inadequate state record.

Upon our examination of the record before us, including the numerous prior court proceedings concerning petitioner and his murder conviction, the following narrative is conclusively supported.

On December 22, 1955, petitioner was indicted by the grand jury of McHenry County, Illinois, for the murder of Lyle E. Larsen. This was Indictment No. 34579. Subsequently, on the same day, Indictment No. 34597 was returned by the same grand jury charging petitioner with the murder of Lyle Larson.

---

* Judge Reynolds is sitting by designation from the Eastern District of Wisconsin.

1. The Honorable Alexander J. Napoli, United States District Judge for the Northern District Court of Illinois, presiding.

At this point we summarily dispose of petitioner's *pro se* contention at various times that he was somehow prejudiced by the return of dual indictments, claiming he was not informed as to which of the two indictments he was entering his plea of guilty. We agree with the district court that there is no merit to this assertion. It is quite clear that the second indictment was returned to supersede the first one because the name of the murder victim was misspelled in the first indictment. Further, throughout this entire proceeding there was never any question raised but that the second indictment, No. 34597, was the only indictment ever considered by the trial court, the petitioner and the prosecution. Whether the first indictment was ever *nolle prossed* of record has not been shown to have been prejudicial to petitioner or of constitutional significance. Hereinafter we shall have reference only to No. 34597.

On January 27, 1956, petitioner personally appeared in the McHenry County Circuit Court and was arraigned on Indictment No. 34597 and funished a copy thereof, together with a list of the grand and petit jurors. At that time the court appointed attorneys James H. Cooney and Charles S. Parker to represent petitioner and they undertook this assignment.

On February 10, 1956, petitioner appeared in open court with his attorneys and moved to quash the indictment, which motion was denied.

It was shown that from February 4, 1956 to March 16, 1956, petitioner's court-appointed attorneys spent approximately sixteen hours in conference with him prior to his plea and approximately fifty additional hours preparing for his trial. For their services and expenses they were subsequently allowed $444.75 by the trial court.

On March 16, 1956, petitioner appeared in open court with his attorneys. The State of Illinois was represented by the State's Attorney. Petitioner in person and by his counsel announced to the court he was ready to enter a plea of guilty. Thereupon the presiding judge personally advised petitioner of the nature of the charge against him (murder) and the terms of punishment which could follow a plea of guilty. To all of this the petitioner personally stated his understanding and with such understanding repeated his intention to plead guilty. The trial court, for the record, again repeated the steps taken and petitioner's responses, accepted the plea and caused the plea and judgment of conviction of the crime of murder as charged in the indictment to be entered upon the plea of guilty.

The trial court then explained in person to petitioner his mandatory right to present evidence in aggravation or mitigation of the offense before the assessment of punishment by the court. A week's delay in such hearing was granted petitioner to enable him to secure his witnesses for such hearing.

On March 23–24, 1956, with petitioner and his attorneys present in open court, a full hearing in aggravation and mitigation was held. At the conclusion of the testimony on March 24, 1956, petitioner's motion for arrest of judgment was denied. Thereupon, petitioner was personally arraigned for sentencing and was sentenced on his plea of guilty and judgment of conviction to a term of 199 years in the Illinois State Penitentiary.

In January, 1957, petitioner, *pro se*, moved for a transcript of his plea without costs. This was denied by the trial court since petitioner had failed to allege either a constitutional or trial error concerning his guilty plea as required by the Supreme Court of Illinois Rule 65–1. In November, 1958, petitioner filed an amended petition for the same purpose which was denied for the same reason.

It should be noted here that at some time during the course of these various proceedings, petitioner obtained a transcript of the plea proceedings from the official court reporter, D. V. Sheffner.

In the meantime, on February 13, 1958, the Supreme Court of Illinois, *sua*

*sponte*, appointed attorney Milton E. Fisher to prosecute a writ of error on behalf of petitioner. Fisher wrote to and personally visited petitioner at the Joliet Prison. On June 28, 1961, Fisher advised the Supreme Court in writing that it was petitioner's "decision at that time *not* to proceed with the petition for writ of error." (Emphasis supplied.) Treating the attorney's letter as a petition for leave to withdraw as court-appointed counsel, on September 22, 1961, the Supreme Court of Illinois allowed the motion. No further action on the prosecution for a writ of error is shown of record. It would appear that petitioner still has his right to appeal his guilty plea to the Supreme Court of Illinois. However, we shall not declare the instant appeal moot for that reason but shall dispose of the matter on its merits.

In April, 1959, petitioner, again *pro se*, petitioned the Supreme Court of Illinois to mandate Judge Carroll of the McHenry County Circuit Court to furnish him a transcript without cost. This was denied on November 19, 1959. Certiorari was denied on February 29, 1960. Phillips v. Carroll, 362 U.S. 906, 80 S.Ct. 617, 4 L.Ed.2d 556 (1960).

On June 1, 1960, petitioner *pro se*, again sought the transcript without costs by filing in the trial court a "Petition For Relief Under the Provisions of the Illinois Post-Conviction Hearing Act." This was denied on July 15, 1960. The Supreme Court of Illinois denied a Writ of Error on December 1, 1960. Certiorari was denied on May 21, 1961. Phillips v. Illinois, 366 U.S. 938, 81 S.Ct. 1665, 6 L.Ed.2d 849 (1961).

In January, 1965, the court reporter attending petitioner's guilty plea died and subsequently it was determined that all his books, records and notes were destroyed, including any notes on petitioner's guilty plea.

As best we can understand the nature of other papers filed by petitioner in the state courts, it appears he was unsuccessful in a state habeas corpus proceeding and in abortive attempts to initiate state post-conviction proceedings and a civil rights complaint.

On September 15, 1967, petitioner filed the subject habeas corpus petition in federal district court, having been given leave to proceed *in forma pauperis*. The petition was drawn on the form prescribed by the rules of that court. Appended to the petition was petitioner's full statement of his case history. Petitioner's grounds for relief generally relate to the adverse rulings in his prior state court proceedings. Respondent filed its return to a rule to show cause and petitioner replied. The district court then ordered respondent to produce any available records or transcripts of the proceedings leading to petitioner's conviction on March 24, 1956. Respondent filed copies of the two indictments and the docket sheets of the trial court. It was further represented that D. V. Sheffner, the official court reporter at the time of the state court conviction, was deceased, that all his shorthand books and records had been destroyed and that no transcript of the trial proceedings could be provided.

On consideration of all available records and the pleadings, the district court found that none of petitioner's federal constitutional rights had been denied and that most of the matters charged did not raise questions of constitutional significance. We agree. The habeas petition was denied and then dismissed.

Petitioner then moved to appeal *in forma pauperis* and, *for the first time*, brought to the attention of the district court a purported transcript of the guilty plea proceedings previously prepared by the court reporter, Sheffner. Having been previously advised in good faith by respondent that no such transcript was available and that none could be prepared, the district court quite properly treated petitioner's motion as a motion to vacate the order of dismissal and took the matter under advisement.

The district court then carefully studied the transcript and treated it as au-

thentic. The record is silent as to when petitioner obtained it. We agree that the transcript is authentic. The district court then filed a second memorandum and therein set out the transcript in full. It fully supports our prior statement of what occurred at the guilty plea proceedings.

The district court then found that the foregoing admonishment was sufficient and that petitioner had not been denied any of his constitutional rights in connection therewith. The motion to vacate was denied, leave to appeal *in forma pauperis* was granted and a certificate of probable cause was issued.

From our examination of the entire record, we readily conclude that plaintiff was not denied his right to appeal his state guilty plea to the charge of murder to the Supreme Court of Illinois, nor was he denied a transcript of the same or the effective assistance of counsel in pursuance of a writ of error.

We further conclude that petitioner's voluntary guilty plea was knowingly and intelligently made. His reliance on Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) is misplaced. See Hansen v. Mathews, 7 Cir., 424 F.2d 1205, 1208 (1970). Even if procedures suggested by Rule 11 of the Federal Rules of Criminal Procedure, Title 28, U.S.C.A., are required under *Boykin, supra*, at the time petitioner pleaded guilty in 1956, Rule 11 required only that the plea be "made voluntarily with understanding of the nature of the charge." It was subsequently amended in 1966. The requirement of a new plea for failure to comply with Rule 11 in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), was held applicable only in cases where the guilty plea was accepted after April 2, 1969, in Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969). Brady v. United States, 397 U.S. 742, 744–745, fn. 3, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

We do not find it necessary to reach the question of the retroactivity of Boykin v. Alabama, *supra*. We note, however, a recent holding of non-retroactivity in United States ex rel. Hughes v. Rundle, 3 Cir., 419 F.2d 116, 118 (1969).

Finally, we conclude petitioner's judgment of conviction on his guilty plea finds adequate support in the record and in the recent trilogy of guilty plea cases, viz: Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). The concluding words of Mr. Justice White in speaking for the court in *Brady, supra*, 397 U.S. at 758, 90 S.Ct. at 1474, seem appropriate here, when he said their expectation was " * * * that courts will satisfy themselves that pleas of guilty are voluntarily and intelligently made by competent defendants with adequate advice of counsel and that there is nothing to question the accuracy and reliability of the defendants' admission that they committed the crimes with which they are charged." [2]

So here, as in *Brady*, we find nothing in the record that impeaches petitioner's plea or suggests that his admissions in open court were anything but knowingly, voluntarily and intelligently made.

Petitioner was ably represented on this appeal by court-appointed counsel, Mr. Cornelius E. Toole, of the Chicago Bar.

The judgment order of the district court denying and dismissing petitioner's habeas corpus petition will be and the same is now affirmed.

Affirmed.

2. See North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, decided November 23, 1970.